**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

HIESEOK RHEE, individually and on behalf of all others similarly situated,

    *Plaintiff(s)*,

v.

CLIENT SERVICES, INC.,

    *Defendant*.

Civil Action No. 19-cv-12253

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This putative class action involves alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.* Presently before the Court is Defendant Client Services, Inc.'s ("Client Services") motion to dismiss the Complaint. D.E. 4. Plaintiff Hieseok Rhee filed a brief in opposition, D.E. 6, to which Defendant replied, D.E. 10-3.[1] The Court

---

[1] After Defendant's deadline to file a reply brief passed, Defendant filed a motion seeking an extension of time to file its reply *nunc pro tunc*. Defendant attached its proposed brief as an exhibit to the motion. D.E. 10. Defendant maintains that, "[d]ue to an oversight," it failed to file a reply brief but that this failure "amounts to excusable neglect and will not prejudice Plaintiff." D.E. 10-1 at 2. Plaintiff opposed Defendant's motion for an extension of time. D.E. 11. Litigants are required to seek an extension "prior to the expiration of the period sought to be extended." L. Civ. R. 6.1(a)(2). Although Defendant did not comply with the Local Rules, the Court will grant Defendant's motion and consider Defendant's untimely reply brief. Defendant's mistake appears to be inadvertent, and more importantly, considering the reply brief will ensure that this matter is decided on the merits.

reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

Defendant argues that Plaintiff lacks standing and also fails to state a claim upon which relief can be granted. The standing argument stems from the Supreme Court's decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), as applied by the Seventh Circuit in *Casillas v. Madison Ave. Assoc., Inc.*, (7th Cir. 2019). The Third Circuit has not addressed the precise issue before the Court but has articulated the criteria by which such decisions should be analyzed. *See, e.g., DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir 2019). The *Casillas* decision is not binding precedent, and the Court does not find it to be persuasive because it did not follow the Third Circuit's decisional framework (and apparently, did not follow the dictates of *Spokeo*). In addition, neither Plaintiff nor Defendant couched her/its arguments under the appropriate Third Circuit analysis, although Plaintiff came closer to the mark. As a result, and for the reasons set forth below, Defendant's motion to dismiss for lack of standing is **denied without prejudice**. Because the Court has an obligation to ensure that it has subject matter jurisdiction, which standing implicates, the Court orders additional briefing in the issue. After the additional briefing, the Court will again address standing and, if necessary, Defendant's argument that Plaintiff has failed to state a claim.

---

[2] Defendant's brief in support of its motion to dismiss (D.E. 4-1) will be referred to as "Def. Br."; Plaintiff's opposition (D.E. 6) will be referred to as "Plf. Opp."; and Defendant's reply (D.E. 10-3) will be referred to as "Def. Reply."

2

## I. Background[3] and Procedural History

Plaintiff allegedly owes a debt, which Defendant attempted to collect. Compl. ¶ 25, D.E. 1. After the alleged debt was in default, the debt "was assigned or otherwise transferred to Defendant for collection." *Id.* ¶¶ 29-30. In a letter dated May 11, 2018, Defendant contacted Plaintiff by letter in an effort to collect the alleged debt (the "Debt Collection Letter"). *Id.* ¶ 31; Ex. A. The Debt Collection Letter "was the initial written communication Plaintiff received from Defendant concerning the alleged Debt." *Id.* ¶ 34. The Debt Collection Letter provided in part as follows:

> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> **Your Account Balance: $16,406.98**
> **Your Account Resolution Offer: $4,923.00**
>
> **ACCOUNT RESOLUTION OFFER**
>
> We are offering you the ability to resolve your account balance for the amount of $4,923.00 To accept this offer, our office must receive payment within forty (40) days of the date of this notice. . . . . If payment is not received in our office within forty (40) days of the date of this notice, this offer will be withdrawn and will be deemed null and void, . . . . This offer does not affect your right to dispute the debt as described above.

---

[3] The factual background is taken from Plaintiff's Complaint (D.E. 1), as well as the exhibit attached to the Complaint (D.E. 1-1). "In reviewing a facial attack" to the Court's subject matter jurisdiction, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000). Here, Plaintiff attached the debt collection letter at issue as an exhibit to her Complaint. Moreover, the letter is referenced in the Complaint. Accordingly, the Court considers the exhibit in deciding this motion to dismiss.

3

*Id.* Ex. A. The bottom of the Letter further states that "[t]his is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.* Defendant's name, logo, and the address "3451 Harry S. Truman Blvd, St. Charles, MO 63301-4047" appears in the top left corner of the Debt Collection Letter. *Id.* ¶ 102; Ex. A. A second address, "PO Box 1586, Saint Peters, MO 63376," appears "at the top left half of the bottom portion of the Letter." *Id.* ¶ 103; Ex. A. The 3451 Harry S. Truman Blvd. address appears again at the bottom of the page, directly under the words "Remit To: Client Services, Inc." *Id.* Ex. A.

After receiving the Debt Collection Letter, Plaintiff filed this putative class action alleging violations of the FDCPA in her two-count Complaint. In Count One, Plaintiff alleges that the "Account Resolution Offer" component of the Debt Collection Letter violates multiple provisions of the FDCPA. *Id.* ¶¶ 35-88. In Count Two, Plaintiff alleges that Defendant violated the FDCPA because the Debt Collection Letter contains two different addresses. *Id.* ¶¶ 89-143. Defendant filed the instant motion to dismiss on July 9, 2019 seeking to dismiss the Complaint in its entirety for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 4.

## II. Standard of Review

To decide a Rule 12(b)(1) motion, a court must first determine whether the party presents a facial or factual attack against a complaint. A facial attack contests "subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). A factual attack challenges "the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise presenting competing facts.'" *Davis*, 824 F.3d at 346

4

(quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Here, in seeking dismissal for lack of subject matter jurisdiction, the parties rely solely on Plaintiff's allegations in the Complaint. Accordingly, Defendant presents a facial attack. As a result, like a Rule 12(b)(6) motion to dismiss, "the Court must consider the allegations of the complaint as true." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### III. Analysis

The Constitution provides that "judicial Power" extends to "Cases" and "Controversies[.]" U.S. Const. art. III, § 2. To meet the case-or-controversy requirement, a plaintiff must show that she has standing to sue. *See Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation omitted). To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358–59 (3d Cir. 2015) (internal quotation marks omitted and punctuation modified)). An injury in fact requires a plaintiff to show that she suffered "an invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A particularized injury means that it "must affect the plaintiff in a personal and individual way." *Id.* at 560 n. 1. A concrete injury refers to one that actually exists; one that is real and not abstract. *Spokeo*, 136 S. Ct. at 1548 (citations omitted). In addition, "'[t]he injury must be concrete in both a qualitative and temporal sense[.]'" *Kamal v. J. Crew. Grp., Inc.*, 918 F.3d 102, 110 (3d Cir. 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

Here, Client Services focuses on the injury-in-fact requirement, arguing that Plaintiff fails to sufficiently allege that she was actually harmed by Client Services. Def. Br. at 6-8. In support,

Defendant relies on *Casillas*. Def. Br. at 4-8. Defendant asserts that Plaintiff's Complaint alleges a similar "bare procedural violation" as found in *Casillas* such that the Complaint must be dismissed for lack of Article III standing. Def. Br. at 8. In response, Plaintiff asserts that she does have standing, citing to Chief Judge Woods' dissent in *Casillas* as to the Seventh Circuit's decision not to consider the matter *en banc*. Pl. Opp. at 6-7. Plaintiff further points to other decisions, including *Macy v. GC Services Limited Partnership*, 897 F.3d 747 (6th Cir. 2018), which she contends are better reasoned and support her view. Pl. Opp. at 7-10.

In *Spokeo*, the Supreme Court considered Article III standing under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* 136 S. Ct. at 1544. Robins, a consumer, filed a class-action lawsuit against Spokeo asserting that Spokeo was a reporting agency under the FCRA and had reported incorrect information as to Robins. *Id.* at 1545-46. The district court dismissed, finding that Robins had not sufficiently pled an injury in fact. *Id.* at 1546. The Ninth Circuit reversed, determining that Robins adequately asserted a particularized injury because Robins alleged that his, rather than another's, statutory rights were violated. *Id.* The Supreme Court then reversed because the Ninth Circuit only considered the "particularized" prong but failed to consider the "concrete" requirement. *Id.* at 1545. The Supreme Court remanded for the Ninth Circuit to consider, in the first instance, the concreteness inquiry. *Id.*

The *Spokeo* Court recognized that a concrete injury could encompass both tangible and intangible harm. *Id.* at 1549 (citations omitted). The Supreme Court then set forth the proper analysis when addressing an intangible injury:

> In determining whether an intangible harm constitutes injury in fact, *both history and the judgment of Congress play important roles*. Because the doctrine of standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in *historical practice*, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has

6

> traditionally been regarded as providing a basis for a lawsuit in English or American courts. *See Vermont Agency of Natural Resources v. United States ex rel. Stevens,* 529 U.S. 765, 775–777, (2000). In addition, because *Congress is well positioned* to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important. Thus, we said in *Lujan* that Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." 504 U.S. at 578. Similarly, Justice Kennedy's concurrence in that case explained that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.* at 580 (opinion concurring in part and concurring in judgment).

136 S. Ct. at 1549 (emphases added). Yet, the Supreme Court cautioned, a plaintiff does not automatically satisfy the injury-in-fact requirement solely because Congress granted the plaintiff a statutory right along with authorization to bring suit. *Id.* The Court in *Spokeo* explained that a plaintiff "could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* (citation omitted). By way of example, the *Spokeo* Court observed, it would be difficult to imagine how Robins would have suffered a concrete harm if Spokeo had merely disseminated an incorrect zip code. *Id.* at 1550.

Nevertheless, the Supreme Court also recognized that the "risk of real harm" could satisfy the concreteness prong. *Id.* at 1550 (citation omitted). The Court continued that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact. In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress has identified." *Id.* (emphasis in original) (citing *Fed. Election Comm'n v. Akins,* 524 U.S. 11, 20–25 (1998)).

The Third Circuit has, on several occasions, addressed standing challenges since *Spokeo*. *See, e.g., DiNaples v. MRS BPO, LLC,* 934 F.3d 275, 279 (3d Cir. 2019) (finding that a plaintiff in FDCPA case had standing to sue); *Kamal v. J. Crew Group, Inc.,* 918 F.3d 102, 106 (3d Cir.

7

2019) (ruling that a plaintiff lacked standing in an action brought under the Fair and Accurate Credit Transactions Act); *Long v. Se Pa. Transp. Auth.*, 903 F.3d 312, 325 (3d Cir. 2018) (holding that the plaintiff lacked standing to maintain an action under the FCRA); *St. Pierre v. Retrieval-Masters Creditors Bureau, Inc.*, 898 F.3d 351, 357-58 (3d Cir. 2018) (concluding that, in an FDCPA class action, the lead plaintiff had standing); *Sussinno v. Work Out World Inc.*, 862 F.3d 346, 352 (3d Cir. 2017) (holding that the plaintiff had standing in matter alleging a violation of the Telephone Consumer Protection Act); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, (3d Cir. 2017) (finding that the plaintiff had standing in FCRA case).

Following the dictates of *Spokeo* as to intangible harm, the Third Circuit has conducted both a congressional and historical inquiry in deciding the standing issue. *See, e.g., Kamal*, 918 F.3d at 110-13. For example, in *DiNaples*, the plaintiff received a debt collection letter in an envelope with "quick response" or "QR" code; a smartphone application could scan the code and reveal the defendant's internal reference number for the plaintiff's account. 834 F.3d at 278. The Circuit previously determined in *Douglass v. Convergent Outsourcing*, 765 F.3d 299 (3d Cir. 2014), that a debt collector violated the FDCPA when it sent a collection letter in an envelope that displayed the debt collector's internal account number for the debtor. In *St. Pierre*, which followed *Spokeo*, the Circuit ruled that a plaintiff asserting an FDCPA action under *Douglass* had standing to sue. 898 F.3d at 357-58.

The *DiNaples* court indicated that because the plaintiff was asserting an intangible harm, *Spokeo* required the Circuit to consider both an historical perspective and Congress' judgment. *Id.* at 279 (citing *Spokeo*, 136 S. Ct. at 1549). In considering both the Congressional and historical inquiries, the Court in *DiNaples* pointed to invasion of privacy, a harm that was traditionally recognized as providing as basis for recovery in both English and American courts. *Id.* at 279-80

8

(citing *St. Pierre*, 898 F.3d at 358). The Third Circuit rejected the defendant's argument that the plaintiff had to show that someone had (or imminently might do so) intercepted the mail, scanned the QR code, read the plaintiff's account information, and determined that the envelope's contents concerned debt collection. *Id.* at 280. The *DiNaples* court explained that the disclosure of the account number itself was the harm that implicated core privacy concerns. *Id.* As a result, the Circuit concluded, the plaintiff sufficiently alleged a concrete injury and therefore had standing to sue.[4] *Id.*

In *Casillas*, the plaintiff brought an action under the FDCPA, alleging that the defendant's collection letter neglected to indicate that the plaintiff had to communicate in writing to invoke certain statutory protections. 926 F.3d at 331. The FDCPA provision at issue provides in relevant part as follows:

> (a) Notice of debt; contents
>
> Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> (1) the amount of the debt;
> (2) the name of the creditor to whom the debt is owed;
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> (4) a statement that if the consumer notifies the debt collector *in writing* within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy

---

[4] It does not appear to the Court that historical analysis employed in *DiNaples* would be appropriate here. Although both cases involve the FDCPA, *DiNaples* addressed information on the envelope which was accessible to third parties, thereby implicating privacy concerns. Here, by comparison, the issue relates to the contents of the letter itself and whether it could mislead Plaintiff. However, because the parties have not adequately briefed the issue, the Court does not make a final ruling as to the appropriate historical inquiry at this time.

9

>of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>(5) a statement that, upon the consumer's *written request* within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.
>
>(b) Disputed debts
>
>If the consumer notifies the debt collector *in writing* within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . .

15 U.S.C. § 1692g (emphases added).

The Seventh Circuit recognized that the defendant had sent the plaintiff "a debt-collection letter that described the process, but it neglected to specify that she had to communicate in writing to trigger the statutory provisions." 926 F.3d at 331. Yet, the *Casillas* court observed that the plaintiff failed to allege that she had attempted – or planned to try – to dispute the debt or verify the actual underlying creditor. *Id.* at 332.

The court in *Casillas* noted that the FDCPA was designed to protect debtors "'from the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.'" *Id.* at 333 (quoting 15 U.S.C. § 1692(a)). Section 1692g, the Seventh Circuit continued, "serves this end by giving debtors a way to dispute or verify their supposed debts. And by obligating creditors to tell debtors how to do that, subsection (a)(4) and (5) reduce the risk that debtors will inadvertently lose the protections given to those who observe the statutory requirements." *Id.* at 333-34. The *Casillas* court, however, ruled that the plaintiff failed to allege that the defendant's actions "harmed or posed any real risk of harm to her interests" under the FDCPA because she did not claim that she

10

had tried to dispute or verify the debt. *Id.* at 334. As a result, the Circuit found that the plaintiff had alleged a "'bare procedural violation'" and lacked standing. *Id.* (quoting *Spokeo*, 136 S. Ct. at 1549).

In so finding, the Seventh Circuit disagreed with the decision reached by the Sixth Circuit in *Macy*, 897 F.3d at 747, which found standing in a similar FDCPA matter; distinguished the Second Circuit's opinion *Strubel v. Comenity Bank*, 842 F.3d 181 (2d Cir. 2016); and declined to find that the plaintiff had a cognizable "informational injury." *Id.* at 335-38. As to the defendant's failure to provide the statutorily-required "in writing" warning, the *Casillas* court found that "the plaintiff had no more use for the notice than she would have had for directions accompanying a product that she no plans to assemble." *Id.* at 334.

Because *Casillas* is from the Seventh Circuit, it is not binding precedent on this Court. Moreover, the Court does not find it to be persuasive because it appears that the *Casillas* court failed to conduct either (much less both) the Congressional inquiry or the historical inquiry, as required by the Supreme Court in *Spokeo*. As noted, the Third Circuit has analyzed both aspects after *Spokeo*.

Chief Judge Wood, who dissented from the denial of *en banc* consideration in *Casillas*, was primarily concerned with developing a clear test in the Seventh Circuit to distinguish between bare procedural injuries as opposed to those that meet standing requirements. *Id.* at 340 (Wood, C.J., dissenting from denial of *en banc* consideration). However, in doing so, the Chief Judge also delved into the congressional inquiry. *Id.* For example, Chief Judge Wood observed that "[t]he panel's opinion will make it much more difficult for consumers to enforce the protections against abusive debt collection practices *that Congress conferred in the [FDCPA]*." *Id.* (emphasis added). The Chief Judge explained that Sections 1692g(a)(4) and (5) require the debt collector to send

11

written notice explaining that that the debtor had to contest the debt, or confirm the creditor, in writing. *Id.* at 341. Chief Judge Wood continued that "[f]ailure to do that is anything but a picky procedural gaffe" because Section 1692g(b) specifies that such a written request from a debtor requires the debt collector to stop collection of the debt (or any disputed portion of the debt) until the debt collector obtains verification of the debt and mails it to the debtor. *Id.* The Chief Judge found that it was a "fair inference" that the defendant's alleged omissions put the plaintiff in "imminent risk of losing the many protection in the [FDCPA] that are designed to regulate the debt-collection process as it goes forward." *Id.* at 341. Chief Judge Wood continued that "[t]he right to verification, the right to have the name and address of the original creditor, the right to cessation of debt-collection activities, and others, are far from bare procedural protections—they are protections that serve as the gateway to the [FDCPA's] substantive regime." *Id.* at 341-42.

The Court finds Chief Judge Woods' analysis to be sound. As a result, the Court does not find the *Casillas* panel's comparison to instructions accompanying a product to be an apt analogy. Instructions are included by manufacturers to help consumers assemble or use a product. The FDCPA, by comparison, is a statutory mandate from Congress. As the Sixth Circuit in *Macy* explained:

> Congress enacted the FDCPA because of "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" that "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Thus, the FDCPA's purpose "is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices," S. Rep. No. 95-382, at 2 (1977), and to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

897 F.3d at 756. Thus, Congress had sound reasons and legitimate concerns in enacting the FDCPA. Critically, the FDCPA's statutory requirements are legal necessities – they are not discretionary or optional recommendations.

Because Defendant's motion relies almost exclusively on *Casillas*, and because the Court is not bound by, nor has found that *Casillas* is persuasive, the Court denies the motion. As noted, Plaintiff's analysis come closer to the dictates of *Spokeo* and the relevant Third Circuit precedent. For example, Plaintiff cites to *Macy*. In *Macy*, the Sixth Circuit framed the issue in the following terms:

> In sum, *Spokeo* categorized statutory violations as falling into two broad categories: (1) where the violation of a procedural right granted by statute is sufficient in and of itself to constitute concrete injury in fact because Congress conferred the procedural right to protect a plaintiff's concrete interests and the procedural violation presents a material risk of real harm to that concrete interest; and (2) where there is a "bare" procedural violation that does not meet this standard, in which case a plaintiff must allege "*additional* harm beyond the one Congress has identified." *Spokeo*, 136 S. Ct. at 1549.

897 F.3d at 756.

However, the Court finds that neither Plaintiff nor Defendant adequately addressed the issues that the Court must assess in making a standing determination. *See Addiction Specialists, Inc. v. Township of Hampton*, 411 F.3d 399 (3d Cir. 2005) (noting that a court must raise standing issues *sua sponte* if the parties do not) (citation omitted). At a minimum, the parties must more clearly analyze the specific injury allegedly suffered by Plaintiff (and whether the alleged injury has occurred or represents a real risk of harm) in light of both congressional and historical perspectives.

For the foregoing reasons, Defendant's motion to dismiss for lack of standing is denied. However, the Court will require the parties to submit additional briefing on the issue.

13

## IV. Conclusion

For the foregoing reasons, Defendant's motion for extension of time to file a reply (D.E. 10) is **GRANTED**. Defendant's motion to dismiss (D.E. 4) is **DENIED** for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). However, the parties are ordered to submit additional briefing on the standing issue, consistent with schedule set forth in the accompanying Order. The Court reserves on Defendant's motion pursuant to Rule 12(b)(6) until it receives the additional briefing. An appropriate Order accompanies this Opinion.

Dated: March 2, 2020

*[signature]*
John Michael Vazquez, U.S.D.J.