**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

HIESEOK RHEE, individually and on behalf of all others similarly situated,

*Plaintiff(s)*,

v.

CLIENT SERVICES, INC.,

*Defendant*.

Civil Action No. 19-cv-12253

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This putative class action involves alleged violations of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. §1692 *et seq.* Presently before the Court is Defendant Client Services, Inc.'s ("Client Services") motion to dismiss the complaint. D.E. 4. On March 2, 2020, this Court denied Defendant's motion to dismiss for lack of subject matter jurisdiction without prejudice and reserved on Defendant's arguments for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 18 at 2 ("Prior Opinion" or "MTD Opinion"). The Court further ordered that the parties submit supplemental briefing addressing Plaintiff's standing. D.E. 19. The Court reviewed the parties' supplemental submissions[1] and decides the motion without oral argument

---

[1] Plaintiff's supplemental brief on Article III standing (D.E. 20) will be referred to as "Plf. Supp. Br."; Defendant's supplemental brief (D.E. 21) will be referred to as "Def. Supp. Br."; Defendant's supplemental opposition brief (D.E. 22) will be referred to as "Def. Supp. Opp."; and Plaintiff's supplemental opposition brief (D.E. 23) will be referred to as "Plf. Supp. Opp.". The Court also considers the parties' initial motion to dismiss submissions in this Opinion. Defendant's brief in support of its motion to dismiss (D.E. 4-1) will be referred to as "Def. Br."; Plaintiff's opposition brief (D.E. 6) will be referred to as "Plf. Opp."; and Defendant's reply (D.E. 10-3) will be referred to as "Def. Reply."

pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the foregoing reasons, Defendant's motion to dismiss for lack of standing is **DENIED**.  Because the Court finds that Plaintiff has standing, the Court addresses Defendant's arguments for dismissal pursuant to Rule 12(b)(6).  Defendant's Rule 12(b)(6) motion to dismiss is **GRANTED in part** and **DENIED in part**.

I.      BACKGROUND & PROCEDURAL HISTORY

Defendant sent Plaintiff a letter (the "Debt Collection Letter" or "Letter"), attempting to collect a debt from Plaintiff.  Compl. ¶ 31.  The Debt Collection Letter provided that Plaintiff had thirty days to notify Defendant that Plaintiff disputed the validity of the debt or to obtain verification of the debt.  *Id.* Ex. 1 at 1.  The Debt Collection Letter also provided Plaintiff with an "Account Resolution Offer," giving Plaintiff the option to resolve the entire debt by paying less than what was owed.  The Letter explained that to accept the offer, Plaintiff had to make a specific payment within forty days.  *Id.*  The Debt Collection Letter also contained two different return addresses.  *Id.* at 1-2.

After receiving the Letter, Plaintiff filed this putative class action, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §1692 *et seq*.  Count One of Plaintiff's Complaint alleges that the Account Resolution Offer overshadows the validation notice and renders the Debt Collection Letter false and misleading.  Count Two alleges that Defendant violated the FDCPA because the letter contained two addresses and failed to specify which one Plaintiff should use for submitting written disputes.  *Id.*  Defendant filed a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  D.E. 4.

Defendant's standing argument stems from the Supreme Court's decision in *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540 (2016), as applied by the Seventh Circuit in *Casillas v. Madison Avenue*

2

*Associates, Inc.*, 926 F.3d 329 (7th Cir. 2019). This Court previously denied Defendant's motion to dismiss as to standing without prejudice because the parties failed to analyze binding precedent in making their arguments. MTD Opinion at 2, D.E. 18. As discussed in the Prior Opinion, although the Third Circuit has not addressed the precise issue before the Court, it has articulated the criteria by which such decisions should be analyzed. *Id.* (citing *DiNaples v. MRS BPO, LLC*, 934 F.3d 275, 279 (3d Cir. 2019)). Accordingly, the Court ordered the parties to submit supplemental briefing that addressed Plaintiff's standing, or lack thereof, under the Third Circuit's criteria. *Id.* Yet, again, the parties largely rely on cases from outside the Third Circuit in their supplemental briefing. But the Court has an obligation to ensure that it has subject matter jurisdiction, which standing implicates. As a result, the Court conducted independent research as to whether Plaintiff has standing to assert his claims.

## II.  ARTICLE III STANDING

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits a motion to dismiss for lack of subject-matter jurisdiction, and constitutional standing is required for a court to have such jurisdiction. Article III of the Constitution limits federal court jurisdiction to cases and controversies. U.S. Const. art. III, § 2. For a plaintiff to have standing to sue, she must show that she meets the case or controversy requirement. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (stating that the requirement is an "indispensable part of the plaintiff's case"). To establish Article III standing, a plaintiff "must demonstrate '(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision.'" *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 358-59 (3d Cir. 2015) (internal

quotation marks omitted and punctuation modified)).  An injury in fact requires a plaintiff to show that he suffered an "invasion of a legally protected interest" that is "concrete and particularized[.]" *Lujan* at 560.  A particularized injury is one that "affect[s] the plaintiff in a personal and individual way."[2]  *Spokeo, Inc.*, 136 S. Ct. at 1548.  A concrete injury is one that actually exists, meaning that it is real and not abstract.  *Id.*  However, an injury in fact does not have to be tangible, as the Supreme Court recognized that the "risk of real harm" can satisfy the concreteness prong.  *Id.* at 1550.

### 2. Analysis

In *Spokeo, Inc. v. Robins*, the Supreme Court considered Article III standing under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681.  *Id.* at 1544.  Robins, a consumer, filed a class action lawsuit against Spokeo, alleging that it was a reporting agency under the FCRA and had reported incorrect information about Robins.  *Id.* at 1545-46.  The district court dismissed for lack of standing, finding that Robins did not sufficiently plead an injury in fact.  *Id.* at 1546.  The Ninth Circuit reversed, finding that Robins' injury was particularized because his, rather than another's, personal statutory rights were violated.  *Id.*  The Supreme Court reversed, finding that the Ninth Circuit failed to consider the "concrete" requirement of the inquiry.  *Id.* at 1545.

The Supreme Court set forth two tests for determining whether an intangible injury could be concrete for the purposes of Article III standing.  The first test looks to history, and asks "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Id.* at 1549.  This test

---

[2] The parties do not appear to dispute that Plaintiff's injury was particularized.  The Debt Collection Letter was sent only to Plaintiff, and the Complaint alleges a violation of Plaintiff's rights.  Therefore, the injury is sufficiently particularized because it affects Plaintiff in a "personal and individual way."  *Spokeo*, 136 U.S.at 1548.

4

approaches standing from a historical perspective, because the case and controversy requirement of Article III is grounded in historical practice. *Id.*

The second test looks to the judgment and instruction of Congress. The Court in *Spokeo* determined that because Congress is "well-positioned to identify intangible harms that meet minimum Article III requirements," it may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Id.* at 1549. However, the Court cautioned that a plaintiff does not automatically satisfy the injury-in-fact requirement whenever a statute grants a statutory right and authorizes the person to sue. *Id.* The *Spokeo* Court stated that a bare procedural violation does not satisfy the injury-in-fact requirement; that "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1543. Nevertheless, the Supreme Court recognized that the risk of real harm may be sufficient in some circumstances to constitute an injury in fact. *Id.* at 1549. In such cases, the Court explained, a plaintiff "need not allege any *additional* harm beyond the one Congress has identified." *Id.*

In this instance, Client Services argues that Plaintiff fails to sufficiently allege that he suffered harm here, and, thus, does not meet the injury-in-fact requirement for Article III standing. Def. Supp. Br. at 3. Client Services continues that Plaintiff's Complaint alleges a "bare procedural violation" with no concrete harm, such that the Complaint must be dismissed for lack of standing. *Id.* Plaintiff counters that he suffered a concrete harm, as defined by the Supreme Court in *Spokeo*. Plf. Supp. Br. at 13-14.

The Third Circuit has addressed challenges to standing after *Spokeo* by conducting both a historical[3] and a congressional inquiry. *See DiNaples*, 934 F.3d at 279-80. And "an overwhelming

---

[3] In the Prior Opinion, the Court explained that the historical analysis conducted in *DiNaples* is likely not applicable here because there does not appear to be a risk of disclosure of information to a third party, as was at issue in *DiNaples*. The Court, however, did not make a final decision as

5

majority of the courts in this district have found that various types of violations under § 1692e give rise to concrete, substantive injuries sufficient to establish Article III standing" under the congressional inquiry analysis. *Napolitano v. Ragan & Ragan*, No. 15-2732, 2017 WL 3535025, at *6 (D.N.J. Aug. 17, 2017) (collecting cases). This Court similarly concludes that Plaintiff suffered a concrete injury sufficient to establish Article III standing.

The FDCPA is intended to "eliminate abusive debt collection practices and to protect consumers against debt collection abuses." *Id.* This includes a debtor's right to be free from false or misleading statements from debt collectors. *See* 15 U.S.C. § 1692e. Thus, the receipt of a misleading debt collection letter may constitute a concrete injury because it is the precise injury that Congress hoped to stop with the FDCPA. Plaintiff contends that the Debt Collection Letter was misleading in violation of Section 1692e. *See, e.g.*, Compl. ¶¶ 131-32. Plaintiff also alleges that the layout of the Letter overshadowed the validation notice. *See, e.g.*, *id.* ¶¶ 120-25. Accordingly, Plaintiff argues that the least sophisticated debtor would be unaware of his right to dispute or validate the debt, which legislative history indicates that the FDCPA intended to protect. Plf. Supp. Br. at 14. These allegations are sufficient to establish a concrete, although intangible injury, establishing Plaintiff's standing. *See, e.g.*, *Hovermale v. Immediate Credit Recovery, Inc.*, No. 15-5646, 2018 WL 6322614, at *5 (D.N.J. Dec. 3, 2018) (finding that debt collection letter with materially misleading statements about late charges constitutes a concrete injury in fact);

---

to the appropriate historical inquiry. MTD Opinion at 9 n.4. In Defendant's supplemental brief, Defendant maintains that Plaintiff fails to establish an injury in fact under a historical analysis because Plaintiff's claims are not closely related to a harm that traditionally provides a basis for a lawsuit in English or American Courts. Def. Supp. Br. at 6. In his supplemental brief, Plaintiff states "that an historical analysis should be unnecessary here" and focuses on the congressional inquiry. Plf. Br. at 9. Thus, Plaintiff appears to concede that he lacks standing under the historical inquiry. The Court assumes, without deciding, this lack of historical basis in light of Plaintiff's apparent concession.

*Napolitano*, 2017 WL 3535025, at *7 (concluding that debt collection letter that falsely implied that an attorney reviewed the case amounted to a concrete injury in fact).

Defendant argues that Plaintiff lacks standing because the alleged harms are hypothetical. *See* Def. Supp. Br. at 7. The Court disagrees. Plaintiff does not need to plead any additional injury, such as the fact that he was actually confused by the Debt Collection Letter, to establish standing. The applicable standard turns on the least sophisticated debtor rather than a particular plaintiff. Consequently, the Court is satisfied that Plaintiff has sufficiently alleged an injury in fact.

Defendant also contends that Plaintiff's injuries are not redressable. Specifically, Defendant argues that monetary damages, which is the only relief available under the FDCPA, will not remedy Plaintiff's loss of rights under 15 U.S.C. § 1692b because he will not have another opportunity to dispute his debt. Def. Supp. Br. at 13-14. By creating a private right of action and allowing for statutory damages for violation of the FDCPA, *see* 15 U.S.C. § 1692k(a), "Congress has 'expressed an intent to make the injury redressable.'" *Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 113 (3d Cir. 2019) (quoting *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 637 (3d Cir. 2017)) (internal brackets omitted). Accordingly, Plaintiff's alleged injury is redressable.

In sum, Plaintiff has standing to assert his claims and Defendant's motion to dismiss pursuant to Rule 12(b)(1) is denied. Because Plaintiff has standing to assert his claims, the Court turns to Defendant's arguments for dismissal pursuant to Rule 12(b)(6).

### III. FAILURE TO STATE A CLAIM

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual allegations to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

#### 2. Analysis

The FDCPA "creates a private right of action against debt collectors who fail to comply with its provisions." *Grubb v. Green Tree Servicing, LLC*, No 13-07421, 2014 WL 3696126, at *4 (D.N.J. July 24, 2014). The FDCPA was enacted by Congress in 1977 with the purpose of eliminating "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692a. "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148

(3d Cir. 2013), *overturned on other grounds by Riccio v. Sentry Credit, Inc.*, 954 F.3d 582 (3d Cir. 2020) (*en banc*).  To that end, "[l]ender-debtor communications potentially giving rise to claims under the FDCPA should be analyzed from the perspective of the least sophisticated debtor." *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006)).  "[A]lthough this standard protects naive consumers, it also 'prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care.'"  *Wilson v. Quadramed Corp.*, 225 F.3d 350, 354-55 (3d Cir. 2000) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)).

To succeed on an FDCPA claim, a plaintiff must demonstrate that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt."  *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).  Defendant does not appear to dispute that Plaintiff is consumer, Defendant is a debt collector, or that Defendant was attempting to collect a debt from Plaintiff.  Thus, the critical issue is whether any part of Defendant's Debt Collection Letter violated the FDCPA.

### a. Settlement Offer

In Count One, Plaintiff alleges that the "Account Resolution Offer" in the Debt Collection Letter renders the letter false and misleading, and overshadowed the validation notice.  Compl. ¶¶ 36-88.  Defendant argues that these claims must be dismissed because the precise settlement offer here does not violate the FDCPA.  Def. Br. at 8-9.

Section 1692e, "False or Misleading Representations," in relevant part, provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in

connection with the collection of any debt." 15 U.S.C. § 1692e. In addition, Section 1692g(a) requires debt collectors to include written notice of certain rights in the initial communication or provide written notice of the rights to the debtor within five days of the initial communication. 15 U.S.C. § 1692g(a). The validation notice must be "conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354. This means that the validation notice must be "sufficiently prominent" and cannot be "overshadowed or contradicted by accompanying messages or notices from the debt collector." *Id.* at 355. But provided that the debt collector complies with the validation notice requirements, "[t]here is nothing improper about making a settlement offer." *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008). A settlement offer, however, "must not deceive or mislead the least-sophisticated debtor into believing that she has a legal obligation to pay." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018).

In *Wilson v. Quadramed Corp.*, the debt collection letter stated that "[w]e shall afford you the opportunity to pay this bill immediately and avoid further action against you" before setting out the required validation notice. 225 F.3d at 352. The Third Circuit determined that the settlement offer did not overshadow or contradict the validation notice. The settlement offer and validation notice appeared on the same page, and were "presented in the same font, size and color type-face" as the validation notice. *Id.* at 356. Moreover, the settlement offer and validation notice were not contradictory. Rather, the letter provided the plaintiff with two offers; the plaintiff could dispute the debt, as outlined in the validation notice, or take the settlement offer. Thus, the debt collection letter did not emphasize, demand, or threaten the plaintiff to take one offer over the other. *Id.*; *see also D'Addario v. Enhanced Recovery Co., LLC*, 798 F. Supp. 2d 570, 571, 574 (D.N.J. 2011) (concluding that debt collection letter that contained three settlement options on the

10

front page and validation notice on the back page contained "a permissible settlement offer, not a misleading demand for payment").

The Debt Collection Letter here provided as follows:

**DEBT VALIDATION NOTICE**

Our client, CHASE BANK USA, N.A., has placed the above account with our organization.

Unless you notify our office within thirty (30) days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within thirty (30) days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Your Account Balance: $16,406.98
Your Account Resolution Offer: $4,923.00

**ACCOUNT RESOLUTION OFFER**

We are offering you the ability to resolve your account balance for the amount of $4,923.00. To accept this offer, our office must receive payment within forty (40) days of the date of this notice. This offer is contingent upon timely receipt of your payment. If payment is not received in our office within forty (40) days of the date of this notice, this offer will be withdrawn and will be deemed null and void, with the remainder of the balance being due and owing. We are not obligated to renew this offer. Please note that no interest will be added to your account balance through the course of Client Services, Inc. collection efforts concerning your account. This offer does not affect your right to dispute the debt as described above.

Compl. Ex. 1. Much like *Wilson*, the Account Resolution Offer does not overshadow or contradict the validation notice. The validation notice and settlement offer appear on the same page and in the same font. In addition, both the validation notice and the settlement offer are highlighted by headings in bold, capital letters. Finally, the fact that the Debt Collection Letter provided Plaintiff with forty days to accept the resolution offer does not overshadow the thirty-day requirement in the validation notice. Like *Wilson*, the Debt Collection Letter provides Plaintiff with two offers, and there is no demand or threat of legal action if Plaintiff decides not to take the settlement offer. Consequently, Plaintiff fails to state a claim with respect to his allegations that the Account Resolution Offer overshadows the validation notice or otherwise renders the Debt Collection Letter false or misleading. Defendant's motion to dismiss is granted on these grounds.

11

### b. Overshadowing the Validation Notice

Plaintiff also alleges in Count One that Defendant failed to effectively convey the validation notice in the first instance.  Defendant counters that the least sophisticated consumer's "attention is *obviously* directed to the validation notice because it is at the very top of the Letter, and clearly labeled '**DEBT VALIDATION NOTICE**.'"  Def. Br. at 11 (emphasis in original).

Again, Section 1692g(a) requires debt collectors to include written notice of certain rights in the initial communication or provide written notice of the rights to the debtor within five days of the initial communication.  15 U.S.C. § 1692g(a).  The validation notice must be "conveyed effectively to the debtor." *Wilson*, 225 F.3d at 354.  This means that the validation notice must be "sufficiently prominent" and cannot be "overshadowed or contradicted by accompanying messages or notices from the debt collector." *Id.* at 355.

In this instance, the validation notice appears in the first paragraph of the first (or front) page of Debt Collection Letter under the heading "DEBT VALIDATION NOTICE."  Compl. Ex. 1.  Then, as quoted above, the requisite notice is provided in a paragraph below the notice header.  After the validation notice and the Account Resolution Offer, the last sentence in the body of the Letter states "FOR IMPORTANT RIGHTS AND PRIVILEGES WHICH MIGHT APPLY TO YOUR STATE OR RESIDENCE PLEASE SEE BELOW OR REVERSE SIDE." *Id.*  But no rights or privileges appear below this sentence or on the reverse side.  Rather, the lower half of the first page of the Letter is a tear-off section for Plaintiff to include with any payment on his debt.  And the second (or back) page of the Letter contains the heading "DEBT VALIDATION NOTICE," but no information appears below this heading.  Accordingly, the least sophisticated debtor may be confused as to whether the validation notice on the first page of the Debt Collection Letter, which appears before the direction to "see below or reverse side," includes all his rights or whether he was supposed to be informed of additional rights on the second page of the letter.

Plaintiff, therefore, sufficiently alleges a claim based on Defendant's failure to effectively convey the required validation notice. Defendant's motion to dismiss is denied on these grounds.

### c. Multiple Addresses

Finally, Plaintiff alleges that the Debt Collection Letter is misleading because it contains multiple addresses for Defendant. Compl. ¶¶ 101-43. Defendant maintains that the presence of two addresses does not violate the FDCPA because the Debt Collection Letter clearly instructs Plaintiff to send written disputes to "our office" or "this office." Defendant continues that the office address is listed under Defendant's name in two separate places on the Letter, and "[e]ven the least sophisticated consumer would know that a PO Box cannot be the location of an office." Def. Br. at 13.

In making this argument, Defendant relies on *Saraci v. Convergent Outsourcing, Inc.*, No. 18-6505, 2019 WL 1062098, at *3 (E.D.N.Y. Mar. 3, 2019). In *Saraci*, the debt collection letter instructed debtors to mail written disputes to defendant's office but the debt collection letter at issue contained two addresses. The *Saraci* court determined that it was clear that debtors should mail disputes to the office address that was listed directly under the defendant's name in three separate locations. *Id.* at *3. Further, the debt collection letter at issue included a return address with the office address. *Id.* at *4. As a result, the court determined that the debt collection letter was not ambiguous and granted the defendant's motion for summary judgment. *Id.*

*Saraci* is not binding authority. And neither party points the Court to any opinions that address this issue within the Third Circuit or this District. Further, as recognized in *Saraci*, other courts in the Eastern District of New York have concluded that a plaintiff can state an FDCPA claim where a debt collection letter included multiple addresses. *Id.* at *3; *see also Pinyuk v. CBE Grp., Inc.*, No. 17-5753, 2019 WL 1900985, at *6-7 (E.D.N.Y. Apr. 29, 2019) (granting motion to

amend to include claim based on inclusion of three separate addresses in debt collection letter).  In *Pinyuk*, the court determined that the plaintiff's claim about multiple addresses was not futile because the least sophisticated debtor may find it confusing to see multiple addresses in a debt collection letter.  The court explained that "[d]espite defendant's claim that all three addresses would have accepted requests for information, the letter itself does not say that and, therefore, it is possible, as plaintiff alleges, that the least sophisticated consumer would be confused and decide not to send a request to any of the addresses."  *Pinyuk*, 2019 WL 1900985, at *7.

This Court finds the reasoning of *Pinyuk* more persuasive than *Saraci*.  The Debt Collection Letter here instructs Plaintiff to notify "this office" to dispute the debt.  The Debt Collection Letter, however, fails to provide a specific address for debtors to send written disputes.  The Debt Collection Letter states that Plaintiff could accept the account resolution offer by sending a payment, and provides an address to remit payment.  Compl. Ex. 1.  The Debt Collection Letter lists the same address for remitting payments under Defendant's name at the top of the letter but also lists a PO Box, which is in a different city, near the remit payment address.  In addition, although the least sophisticated debtor knows that an office cannot physically be located at a PO Box, it is reasonable to assume that a company can receive its mail through a PO Box instead of its physical office location.  Based on the multiple addresses and Defendant's failure to provide a specific address to dispute the debt, the least sophisticated debtor may be confused as to which address he should use to dispute his debt.  Plaintiff, therefore, states a plausible claim under the FDCPA based on these allegations.  Thus, Defendant's motion to dismiss is denied on these grounds.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss (D.E. 4) is **GRANTED in part** and **DENIED in part**. The dismissed claim is dismissed without prejudice and Plaintiff is provided with thirty (30) days to file an amended complaint that cures the deficiencies noted herein. An appropriate Order accompanies this Opinion.

Dated: July 21, 2020

                                               _____
                                               John Michael Vazquez, U.S.D.J.